UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BOARD OF TRUSTEES OF THE TEAMSTERS LOCAL 631 SECURITY FUND FOR SOUTHERN NEVADA, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br>GRAND EXPO (USA), INC., a Nevada corporation,<br><br>　　　　　　　　　　Defendant. | Case No. 2:14-cv-02017-MMD-GWF<br><br>ORDER<br><br>(Plaintiffs' Motion for Default Judgment- dkt. no. 10) |

**I.　SUMMARY**

Plaintiffs, Board of Trustees of the Teamster Local 631 Security Fund for Southern Nevada and of the Teamsters Convention Industry Training Fund (collectively "Trust Funds"), move for default judgment against Defendant Grand Expo (USA), Inc. ("Grand Expo"). (Dkt. no. 10.) Defendant has not responded. For the reasons stated below, the Motion for Default Judgment ("Motion") is granted.

**II.　BACKGROUND**

The following facts are taken from the Complaint filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1500, alleging Grand Expo violated the terms of a collective bargaining agreement ("CBA") by failing to make its books and records available for Plaintiffs to audit.[1] (Dkt. no. 1.) Plaintiffs

---

[1] In addition to jurisdiction pursuant to 28 U.S.C. § 1132(e) as Plaintiffs pleaded in the Complaint (dkt. no. 1.), the Court also has jurisdiction based on Section 301 of the Labor Management Relations Act, 29 U.S.C § 185(a), because the collective bargaining agreement at issue is between a union and an employer.

are fiduciaries for purposes of ERISA. (Dkt. no. 1. at ¶ 2.) Grand Expo is a signatory to the CBA between Grand Expo and the International Brotherhood of Teamster Local 631. (*Id.* at ¶ 3.) Grand Expo acted as an employer within the State of Nevada employing persons ("Covered Employee") performing work covered by the CBA. (*Id.* at ¶ 4.) The Trust Funds are ERISA employee benefit trust funds that provide benefits to Covered Employees. (*Id.* at ¶ 5.) The CBA incorporates by reference to the Trust Agreements establishing the Trust Funds ("Trust Agreements"). (*Id.* at ¶ 6.) Pursuant to the CBA and the Trust Agreements, Grand Expo is obligated to make its books and records available for a contract compliance review ("Audit"). (*Id.* at ¶ 7.) Grand Expo failed to make its books and records available for an Audit. (*Id.* at ¶ 8.)

After filling proof that the Complaint was served on Defendant's agent on December 11, 2014 (dkt. no. 7), Plaintiffs moved for entry of Clerk's default (dkt. no. 8). The Clerk entered default against Defendant on January 7, 2015. (Dkt. no. 9.) Plaintiffs now move for default. (Dkt. no. 10.)

**III.    LEGAL STANDARD**

Obtaining a default judgment is a two-step process governed by Federal Rule of Civil Procedure. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after the clerk enters default, a party must seek entry of default judgment under Rule 55(b).

Upon entry of default, a court takes the factual allegations in the non-defaulting party's complaint as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in a court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d, at 1471–72.

## IV.   ANALYSIS

### 1.   Procedural Requirements

Plaintiffs have satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). The Clerk properly entered a default against Defendant, pursuant to Fed. R. Civ. P. 55(a). (Dkt. no. 9.) Defendant is a corporation and therefore is not an infant or an incompetent person and, insofar as it has not answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. *See* Fed. R. Civ. P. 55(b)(2); *Produce Alliance, LLC v. Lombardo Imps., Inc.*, No. 2:12-cv-00433, 2013 WL 129428, at *2 (D. Nev. Jan. 9, 2013). Thus, there is no procedural impediment to entering a default judgment.

### 2.   Eitel Factors

#### a.   Possibility of Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002); *see also Produce Alliance,* 2013 WL 129428, at *2. Here, Defendant has not answered, made an appearance, or otherwise responded to the Complaint. Due to Defendant's refusal to defend this action, the possibility of prejudice to Plaintiffs in the absence of default judgment is great. If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery. Thus, this *Eitel* factor weighs in favor of entering default judgment.

///

### b.  Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where a complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978). Fed. R. Civ. P. 8(a)(2) requires that "[a] pleading . . . contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." In order to satisfy the Rule 8 requirement, the pleading must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-678 (2009) *(citation omitted).*

Plaintiffs brought this action to enforce their rights under a CBA. The Complaint alleges that Plaintiffs entered a CBA which incorporated reference to the Trust Agreements with Defendant. (Dkt. no. 1 at ¶¶ 1-10.) Pursuant to the CBA and the Trust Agreements, Grand Expo is obligated to make its books and records available for Plaintiffs to audit, but has failed to comply. (Dkt. no. 1 at ¶ 8; dkt. no. 10, Exh. 2, at 9; Exh. 3, at 7-8.) Plaintiffs attached excerpts of the Trust Agreements and their counsel's declaration to the Motion.

Since Defendant failed to respond to the Complaint or otherwise appear in the proceedings, Defendant is deemed to have conceded that it has a duty to permit Plaintiffs to conduct an audit, and that it has breached that duty. As a result, Plaintiffs had to obtain counsel to seek a court order to compel Defendant to provide documents, incurring attorneys' fees and costs. (Dkt. no.1 at ¶ 9.) Thus, the Court finds that Plaintiffs have stated a sufficient claim to enforce their rights under the CBA.

### c.  Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of Defendants' conduct." *PepsiCo,* 238 F. Supp. 2d at 1176; *Produce Alliance,* 2013 WL 129428, at *3. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's

///

4

conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

In the Motion, Plaintiffs seek to collect presumed amount of delinquent contributions. Plaintiffs reason that since Defendant failed to produce records, Defendant incurred the presumed amount of delinquent contributions. (Dkt. no. 10. at 4, ¶¶ 17-26.) Plaintiffs points to Section F ("Section F") of the Trust Agreements which states:

> If an employer *refuses* to provide all or part of the requested record or if the employer's records are incomplete, inaccurate or unclear, the Trustees *have the right* to presume that all of the employer's employees were engaged in work for which Trust Contributions are due and apply such conversation and assumptions as they deem appropriate to determine the amount thus due, including but not limited to, personal knowledge and expertise in the trade, size of project, personal knowledge of amount of work performed, industry standard regarding type of work performed, calculating hours worked from reports field with state or national agencies, or to other such information available… *If there are no facts, records or information available*, $100,000 in contributions shall be deemed due for each calendar year covered by the compliance audit review period. (Emphasis added.)

(Dkt. no. 10. Ex. 4, at 7-8.) However, there are two problems with Plaintiff's argument as to the alleged injury.

First, the Complaint does not seek monetary damages under Section F. The Complaint seeks as relief an order compelling Grand Expo to make the documents available for Audit, an award of fees and costs and the residual request for equitable relief. (Dkt. no. 1 at 2.)

Second, even setting aside the Complaint's silence as to monetary damages, Plaintiffs have not demonstrated entitlement to damages under Section F. This Section[2] provides Trustees two ways to calculate contributions due when an employer refuses to provide records: First, Trustees can use information from other sources in

///

---

[2] At the outset, the Court notes this Section is applicable only to situations when "an employer refuses to provide all or part of the records." Here, Defendant did not affirmatively refuse to provide records but rather failed to respond to Plaintiffs' document requests.

5

deriving the amount of contributions. For example, Trustees can use personal knowledge of the trade and projects performed, and reports from other agencies. Here, Plaintiffs have not alleged they have no other source of information to calculate contributions due; Plaintiffs simply state that they did not have records from Defendant. (Dkt. no.10 at ¶¶ 16-19.) Second, if there are no facts, records or information, the Trust Funds can presume the amount due to be $100,000 per review calendar year. Plaintiffs again have not alleged that they have no facts, records or information to render the presumption amount applicable.

Since Plaintiffs fail to allege they do not have any other resource to determine contributions due, and Defendant may comply with a court order to provide records, Plaintiffs cannot yet pursue the presumed amount. They may do so only after they have demonstrated that they have no source of information to calculate the amount of contributions due, *both* from Defendant and from other sources.

Conflating failure to provide records with failure to pay contributions, Plaintiffs then seek unpaid contributions together with interest and liquidated damages in the amount of $88,156 under 29 U.S.C. § 1132(g)(2). The requested damages include $58,331 unpaid contributions (calculated by prorating the presumed amount), $6,374 interest on unpaid contributions, $11,666 liquidated damages, $6,785 incurred attorney's fees and costs of the action, and $5,000 anticipated attorney's fees in executing the judgment. (Dkt. no 10 at 6, ¶¶ 19-28.) However, § 1132(g)(2) is only applicable to actions alleging violation of 29 U.S.C. § 1145, which requires employers to pay contributions under the terms of the plan. Since the Complaint does not allege Defendant failed to make required contributions under § 1145, § 1132(g)(2) does not apply here.

In summary, because the Complaint does not seek monetary damages and does not allege that Defendant failed to make required contributions, the only harm established is Plaintiffs' attorney's fees and costs in maintaining this suit to enforce their rights under the CBA. Therefore, Plaintiffs' requested damages are not

proportional to the harm Defendant has caused based on the admitted facts in the Complaint. This factor weights against granting default judgment.

### d. Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *Produce Alliance,* 2013 WL 129428, at *4. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Accordingly, no genuine dispute of material facts would preclude granting Plaintiffs' motion.

### e. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *Produce Alliance,* 2013 WL 129428, at *4. Plaintiffs' counsel sent a letter to Defendant requesting documentations before filing this action. (Dkt. no. 10, Ex. 5.) Since filing this action, Defendant has not responded. Due to the repeated failure to respond, it is unlikely that the default resulted from excusable neglect.

### f. Decision on the Merits

The seventh *Eitel* factor provides that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted*)*. Moreover, Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible. Thus, the Court is not precluded from entering default judgment against Defendant.

### g. Conclusion

Six out of the seven *Eitel* factors weigh in favor of granting default judgment. Therefore, the Court finds good cause to grant Plaintiffs' Motion.

///

### 3. Attorney's Fees and Costs

The Court has discretion under 28 U.S.C. §1132(g)(1) to award reasonable attorney's fees and costs in bringing this action. The Ninth Circuit affords trial courts broad discretion in determining the reasonableness of costs and fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The Court must first determine reasonable fees by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the court decides whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted). Here, the *Kerr* factors are not implicated.[3]

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community for "similar services by lawyers of reasonably comparable skill, experience and reputation." *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984).

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. "The district court also should exclude from this initial fee calculation hours that were 'not reasonably expended'." *Hensley*, 461 U.S. at 433–34 (citation omitted). "In

///

---

[3] The Kerr factors are only applicable to actions brought by plaintiffs pursuant to 29 U.S.C. § 412. *See Kerr*, 526 F.2d at 70 (9th Cir. 1975).

other words, the court has discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Edwards v. Nat'l Business Factors, Inc.*, 897 F.Supp. 458, 460 (D.Nev.1995) (quotation omitted); *see also Gates*, 987 F.2d at 1399 (9th Cir. 1992).

Plaintiffs request reimbursement of attorney's fees at $275-$300 per hour for an associate's time, and $300 per hour for a partner's time. Based on the affidavits of Plaintiffs' counsel and the Court's experience, the Court finds these rates to be reasonable. However, after reviewing Plaintiffs' attached exhibits, the Court finds documentation of the hours inadequate to support the requested amount. The hours Plaintiffs listed for December add up to only $932.50, rather than $ 4,485. (Dkt. no. 10, Exh. 6.) Plaintiffs also failed to provide descriptions for some of the hours in December and in January. The Court therefore is unable to determine their reasonableness and has to reduce the amount accordingly. The Court thus awards attorney's fees in the amount of $2,840.50 ($788 for November, $710 for December and $1,342.50 for January). The Court finds Plaintiffs' costs request ($460) to be reasonable. Since Plaintiffs provided no support for how they arrived at $5,000 anticipated attorney's fee for executing the judgment, the amount will not be awarded.

Therefore, the Court orders attorney's fees and costs in the amount of $3,300.50.

**V.    CONCLUSION**

It is ordered that Plaintiffs' Default Judgment (dkt. no. 10) is granted.

It is further order that Defendant deliver or make available to the Trust Funds all paper and documentation necessary for their auditing purposes.

The Clerk of the Court shall enter judgment against the Defendant Grand Expo in the amount of $3,300.50 for attorney's fees and costs.

DATED THIS 8th day of July 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE